```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
_____

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
vs.                             )    No. 08-20397-JPM-dkv
                                )
MORRIS AKINS,                   )
                                )
        Defendant.              )
_____

     REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
        THE SEARCH OF THE PREMISES LOCATED AT 949 E. BROOKS ROAD
_____
```

The defendant, Morris Akins, has been charged in a four-count indictment with (1) robbery affecting commerce in violation of 18 U.S.C. § 1951; (2) knowingly using and carrying a firearm during robbery affecting commerce in violation of 18 U.S.C. § 924(c); (3) killing Michael Byest with the intent to prevent him from communicating information relating to a robbery affecting commerce to a law enforcement officer or judge of the United States; and (4) conspiring to affect interstate commerce by robbery from on or about May 10, 2007 to on or about June 11, 2007. Before the court is the May 12, 2010 motion of Akins to suppress all evidence, including but not limited to a firearm and t-shirt, seized by law enforcement officers during a search of the premises located at 949 E. Brooks Road, Memphis, Tennessee on May 10, 2007. (D.E. No. 226.) The government filed a timely response in opposition. The

motion was referred to the United States Magistrate Judge for report and recommendation.

Pursuant to the reference, an evidentiary hearing was held on August 16 and 17, 2010.[1]  At that hearing, the government called six officers with the Memphis Police Department ("MPD") plus Kimitha Boscoe as witnesses: (1) Officer Joseph Henry Knight, (2) Officer Marcus Redd, (3) Officer Lee Potts, (4) Officer Chester Striplin, (5) Officer James Taylor, and (6) Sergeant Joe Poindexter.  The government also introduced seven exhibits: (1) Commercial Lease for 949 E. Brooks Road signed by Tommy Nelson ("Ex. 30"); (2) Lease Extension signed by Tommy Nelson ("Ex. 31"); (3) the Consent to Search Form signed by Geral Jones and witnessed by Officers McMoore and Potts ("Ex. 32"); (4) the victim's statement("Ex. 33"); (5) the redacted statement of Sgt. Joe Poindexter ("Ex. 34"); (6) the Statement of Sgt. Joe Poindexter ("Ex. 35"); and (7) the ballistics report ("Ex. 36").  The defense called three witnesses: (1) Akins, (2) Geral Jones, and (3) Willie Mae Stokes.  The defense also introduced seven exhibits: (1) the Robbery Defendant's Statement ("Ex. 37"); (2) the Statement of Geral Jones ("Ex. 38"); (3) the photograph of 949 East Brooks Rd. ("Ex. 39"); (4) a receipt of Geral Jones in the amount of $375.00 ("Ex. 40"); (5) a misdemeanor citation ("Ex. 41"); (6) a photograph

---

[1] The evidentiary hearing included both the present motion to suppress (D.E. No. 226) and Akins' Motion to Suppress Show-Up and State Court Identification filed May 7, 2010, (D.E. No. 225), for which a separate Report and Recommendation is submitted.

of East Brooks Road ("Ex. 42"); and (7) a notice of property seizure ("Ex. 43"). After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

The MPD officers testified consistently to the following facts, and this court accepts their testimony as credible and finds as fact the following.

On May 10, 2007, at or around 6:00 p.m., MPD responded to a robbery dispatch at the Easy Way grocery store located at 4599 Elvis Presley Boulevard. The dispatch alerted MPD that there were two black male suspects and one black female suspect who left the scene in a white and tan Chevrolet Tahoe with license plate number "389-LBC." Less than one minute after hearing the broadcast, Officer Joseph Knight witnessed a vehicle meeting this description speed through the intersection of Elvis Presley and Bluebell heading north. Officer Knight broadcast his observation to the other officers over the radio.

Approximately five minutes after the original broadcast, Officer Marcus Redd drove down Brooks Road to look for the reported robbers. Officer Redd saw a white and tan Tahoe parked in front of 949 E. Brooks Road, Suite 2, bearing license plate number "389-LQC," which was one letter off from the dispatched plate number.

While waiting for additional officers to respond, Officer Redd talked to employees at the beauty shop next door to Suite 2 who reported that they had no knowledge of who owned the Tahoe in question. Officer Redd testified that the door to Suite 2 was locked.

According to Officer Potts, once he and Officer McMoore[2] arrived, they along with Officer Redd rang the doorbell or pressed the buzzer at 949 E. Brooks Road, Suite 2. Officers Redd and Potts both testified that Geral Jones answered the door. The officers asked Jones if she knew who was driving the Tahoe in question parked outside. Jones said she did not know. The officers asked for permission to enter the business, and Jones verbally consented. Officer Potts testified that Jones identified herself as the manager of the business.

After entering the premises, the officers saw that Akins, who was sitting across the room, matched the description of the suspect from the dispatch alert for the robbery of the Easy Way grocery. The officers detained Akins. While Akins was still present, the officers asked Jones for her consent to search the premises, and Jones gave verbal consent. The officers then asked her to sign a Consent to Search Form. (Ex. 32.) Officer Potts explained the form to Jones, and Jones did not indicate that she had any problem reading or understanding the form. Jones signed the consent to

---

[2] Officer McMoore did not testify because he was killed in a motorcycle accident in June of 2009. (Tr. at 237, 275.)

4

search.  Akins and at least one other black female were present when Jones signed the consent to search form.  Neither Jones nor Akins made any statements at anytime to suggest that she was not the manager of the business or that Akins was the manager of the business.  Jones cooperated with the officers while they searched the premises. The consent to search form signed by Jones authorized Officers "R. McMoore #7019 and L. Potts #1807 Memphis Police Department (titles of officers or agents and name of agency)" to conduct a complete search of "my premises located at 949 E. Brooks Suite #2."  (Ex. 32.)

The premises consisted of an open room with tables and a business office connected to another room by a short hall.  The other room contained upright gambling machines.  The premises appeared to be used for an illegal gambling operation.  The officers noticed that one of the ceiling tiles was slightly out of place.  There was a table located just directly below the misplaced tile.  The officers searched above the ceiling tile where Officer Striplin found a .38 caliber firearm.  The officers also testified that a blue t-shirt was recovered from the premises during the search.  The firearm and t-shirt are the subject of this suppression motion.

There were differing accounts between the officers and the defense witnesses as to whether Akins was an owner and/or operator of the gambling business being conducted at 949 E. Brooks Road, Suite 2.  Whether Akins was the owner and/or operator of the

business operating at 949 East Brooks Road, Suite 2 is a finding of fact contingent on the credibility of the testimony given at the suppression hearing.[3]

Akins testified that he leased the property at 949 E. Brooks Road, Suite 2, that it was his place of business, that he operated the business there, that the business was an illegal gambling operation, and that he and Tommy Nelson were partners in that business. (Tr. at 30, 41-42, 44-46, 60-61.) On further cross examination, Akins admitted that there was no documentation demonstrating that he owned or operated the property in any respect, that Tommy Nelson leased 949 E. Brooks Road, Suite 2, from Bates Properties, the owner of the property, that he, Akins, did not have a business license to operate a business at the premises, and a business license, if any, would be in the name of Tommy Nelson. (Tr. at 41, 44-46.) Akins also testified that he did not own or rent the area above the ceiling tiles where the gun was found. (Tr. at 53.) This court, however, does not find Akins to be a credible witness based on his multiple felony convictions, his bias as an interested party in the proceeding, and the lack of evidence corroborating his testimony.

Geral Jones, the individual who consented to the search of 949 East Brooks Road, Suite 2, testified that she worked there from

---

[3] Even though whether Akins was an owner or operator is question of fact, the court will make the finding in the next section in connection with the analysis of standing.

2:00 pm until 10:00 pm, five or six days a week, that Akins was her boss, that he paid her, that he was present on a daily basis, that he was in charge of the day-to-day operations, and that he closed the business most nights. (Tr. at 174-175, 183.)

Jones's testimony, however, was inconsistent with previous statements she had made. Jones admitted that when she was questioned by the police on the day of the search, she never told the police that Akins was the manager, and that she identified only Tommy Nelson as the lessee. (Tr. at 181; Ex. 38.) She further conceded that she mentioned only Willie Mae Stokes and Charles Thomas as employees of the operation and never mentioned Akins as being involved in the business despite the fact that he was present at the scene. (Tr. at 181-84.) She testified that she was not paid or hired by the Akins but was hired by Tommy Nelson. (TR at 62, 184, 381-390; Ex. 38.) In addition, Jones testified on cross examination that she was "in charge" of the business at the time of the search (Tr. at 374), that she closed the business every night except Friday and Saturday, that she had keys to the building (Tr. at 187), and that she collected the cash from the gambling machines. She also pleaded guilty to a misdemeanor charge of possession of a gambling device. (Ex. 41.) Jones also may be biased toward Akins since she knows his family and had recently borrowed money from Akins's sister. (Tr. at 186-87.) Moreover, her testimony was inconsistent with Akins's testimony in certain respects. For instance, Akins testified that he hired Jones, but

Jones testified that Nelson hired her.  Also, Jones seemed to remember details when helpful to Akins but claimed not to remember other details, such as when she was handcuffed and when the handcuffs were removed, if those details did not benefit her or Akins.  Based on her inconsistent statements, her personal relationship with the Akins' family, her demeanor in the courtroom, her lack of memory of significant details, and her obvious desire to help Akins, this court does not find Jones to be a credible witness.

Willie Mae Stokes testified on direct that she worked the business at 949 East Brooks Road, that she had worked there about a year prior to the date of the search, that Akins was her boss, and that she had known him a long time through his sister.  (Tr. at 46.)  On cross examination, she acknowledged that the business was an illegal gambling operation, that Tommy Nelson was the actual owner of the "place," and that Akins and Nelson were "together." (Tr. at 170.)  Stokes testified that Jones was one of the managers "on her shift."  (*Id*.)  Stokes testified that Akins had given her cash payments in the past for her work at the business operation. (*Id*.)  Stokes was not able to offer any additional proof to support the claim that Akins was the owner or operator of the business or her boss, such as paychecks, etc.  This court does not find Stoke's account of Akins' position within the business operation to be credible.

8

Finally, Kimitha Boscoe, the records custodian who worked for M3 Management, formerly Bates Properties, the company that leased the premises at 949 E. Brooks Road, was called by the government as a witness on the issue of standing. She confirmed that the property was leased by Tommy Nelson and produced a lease and lease extension signed by Tommy Nelson for the premises and the period of time in question. She testified that the monthly rent payment had occasionally been delivered by Akins, but that Akins had never held himself out as an owner or operator of the business, and that the owner of the property had never given consent to Tommy Nelson to sublease the property to anyone else. (Tr. at 201.)

II. PROPOSED CONCLUSIONS OF LAW

A. <u>Standing to Suppress the Evidence Based on a Reasonable Expectation of Privacy</u>

As an initial matter, the court must decide whether Akins had a reasonable expectation of privacy at 949 E. Brooks Road, Suite 2, and therefore has standing to bring this motion to suppress.[4] It is undisputed that the property located at 949 E. Brooks Road was commercial and housed a business operation. The expectation of privacy in business property is distinguishable and lower than the expectation in a personal residence; nevertheless, the Fourth Amendment prohibition against unreasonable searches still applies

---

[4] The court initially heard testimony only as to the standing issue, but then proceeded, in the interest of judicial economy, to hear all the proof in connection with the motion to suppress, prior to ruling on the standing issue.

to private commercial property. *New York v. Burger*, 482 U.S. 691, 699-700 (1987). To determine whether a privacy interest exists, the court looks to the nature of the individual's ties to the property when determining whether there is a legally sufficient interest. *United States v. Harris*, 255 F.3d 288, 294 (6th Cir. 2001). The Supreme Court has found that owners or operators of a business have an expectation of privacy in the commercial property. *New York*, 482 U.S. at 699. A defendant who does not have an expectation of privacy in the property has no standing to dispute an illegal search or seizure of a third person's property. *Rakas v. Illinos*, 439 U.S. 128 (1978).

Akins asserts that he was the owner and/or operator of the business at 949 East Brooks Road, and therefore he should be entitled to claim protection under the Fourth Amendment. The only evidence offered by Akins in support of his claim was the testimony of Akins, Jones, and Stokes; he offered no documentary evidence to support his claim. Akins also testified that he did not own or rent the area above the ceiling tiles where the gun was found.

The testimony of the other two witnesses called by Akins concerning Akins' position as an owner or operator of the business was not credible. Neither of the witnesses were able to testify as to Akins' duties in the organization other than he left cash for them. They offered no documentation or corroborating information to support their testimony that Akins was an owner or operator. Moreover, at the time of the search in May of 2007, Jones' failed

to identify Akins as having any association with the business, and her failure to do so is a superior indicia of truth regarding his relationship with the premises.

After reviewing the testimony and proof offered, this court finds that Akins was not an owner or operator of the business and had no expectation of privacy in the commercial property located at 949 E. Brooks Road, Suite 2. Akins was not able to demonstrate that he had a sufficient interest based on the nature of his ties to the property. Occasionally delivering the monthly lease payment or providing cash payments to employees does not demonstrate that Akins had an expectation of privacy in the property. As an individual simply present in an illegal gambling operation, Akins had no reasonable expectation of privacy in the public areas of the business. *Minn. v. Carter*, 525 U.S. 83, 88-95 (holding that defendants had no legitimate expectation of privacy in another's premises which they were visiting for the purely commercial purpose of bagging cocaine); *see also United States v. White*, 401 U.S. 745, 752 (1971)(holding that even less expectation of privacy exists in the premises of an illegal business). Because he lacks an expectation of privacy in the premises, in particular the area above the ceiling tiles where the gun was found, and in the illegal gambling operation, Akins is not entitled to claim the protection of the Fourth Amendment and has no standing to suppress the evidence seized from 949 East Brooks Road.

11

B. <u>Jones' Actual or Apparent Authority to Consent to the Search</u>

Even if Akins had standing to contest the search, the search was proper if Geral Jones had actual or apparent authority to consent to the search of the illegal gambling business located at 949 E. Brooks Road, Suite 2. Valid consent to search may be obtained from "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007)(internal citations omitted)(quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)). In situations where actual authority does not exist, an alternative justification for a valid search is apparent authority. The Sixth Circuit has explained the apparent-authority doctrine as follows:

> When one person consents to a search of property owned by another, the consent is valid if the facts available to the officer at the moment . . . warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises. Whether the facts presented at the time of the search would warrant a man of reasonable caution to believe the third party has common authority over the property depends upon all of the surrounding circumstances. The government cannot establish that its agents reasonably relied upon a third party's apparent authority if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful without further inquiry. Where the circumstances presented would cause a person of reasonable caution to question whether the third party has mutual use of the property, warrantless entry without further inquiry is unlawful.

12

*United States v. Taylor*, 600 F.3d 678, 681 (6th Cir. 2010) (quoting *United States v. Waller*, 426 F.3d 838, 846 (6th Cir. 2005)).

Where there are two competing accounts of the events surrounding a warrantless search, the court must make a finding of fact based on the credibility of the witnesses it observes at the suppression hearing. *United States v. Taylor,* 956 F.2d 572, 576 (6th Cir.) (quoting *United States v. Rose,* 889 F.2d at 1490, 1494 (6th Cir. 1989)). To weigh the credibility of different witnesses, the court may consider whether one account is more plausible on a certain issue, whether there are inconsistencies in the witnesses' testimony, whether the defendant is a "sophisticated and experienced criminal," and whether there was evidence that the defendant was "cordial, cooperative, and helpful" to officers. *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998)(finding that the defendant consented to the warrantless search based on officers credible testimony despite noting certain inconsistencies); *see also United States v. Abdullah*, 162 F.3d 897, 902 (6th Cir. 1998)(finding consent notwithstanding defendant's claim that he was unable to understand the officer's search request based in part on the finding that the officer's testimony was credible).

This court concludes that Geral Jones had actual authority to consent to the search of 949 E. Brooks Road. Jones worked at the property as a manager/cashier from 2:00 p.m. to 10:00 p.m. Monday through Thursday and on Saturday. (Tr. at 177.) She had keys to

the business, and her duties included letting customers into the business. (Tr. at 177, 187, 374.) She had authority to access the money for the business under a desk in the office. (Tr. at 389.) When Officers Redd, Potts, and Woods rang the doorbell of the business, Jones answered the door and identified herself at the manager. (Tr. at 228, 231-32, 235, 240, 268-69, 273-75, 410-12.) Acting as a manager for the business, Jones signed a Notice of Property Seizure and Forfeiture (Ex. 43) and a Receipt for Monies (Ex. 40).

Jones also had apparent authority to consent to the search. At a minimum, Jones' actions on May 10, 2007 would warrant a man of reasonable caution to believe that she had authority over the premises. The officers were not faced with any ambiguities as to who was in charge of the premises when they were given permission to search. Akins and Stokes were present, and neither identified himself or herself as one having authority over the business. In addition, neither Akins nor Stokes protested or disputed Jones' authority to sign the consent form. The Sixth Circuit has established that the potential objector loses out and a search will be deemed valid when the potential objector is nearby but fails to participate in the threshold dialogue. *See Ayoub*, 498 F.3d at 537. Consequently, Geral Jones had apparent authority to consent to the search of 949 E. Brooks Road on May 10, 2007.

C.   Whether Jones' Consent was Voluntary

If Jones had both actual and apparent authority to consent to search, the court must also decide whether Jones' consent to a search of 949 E. Brooks Road was voluntary.  The government bears the burden of showing by a preponderance of the evidence that the consent was voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 235-246 (1973).  Whether a consent to search is voluntarily and knowingly given is "a question of fact to be determined from the totality of the circumstances." *Id*. at 243.  The totality of the circumstances include, but are not limited to, the level of education or intelligence of the person, the lack of any warnings regarding that person's rights, and the length and nature of questioning.  *See United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995); *Bustamonte*, 412 U.S. at 226, 248.  The government must demonstrate through "clear and positive testimony" that the consent was voluntarily given and not tainted by duress or coercion. *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009).

Officers Redd and Potts testified that Jones was calm and cooperative when she consented to the search and that she had not been handcuffed or threatened prior to offering her consent.  (Tr. at 233, 242, 269-70, 277, 285.)  They testified that they reviewed the consent form with Jones prior to receiving her signature and Jones did not ask any questions or suggest that she did not understand.   (Tr. at 232, 273-74, 288.)   The officers also testified that they never drew their weapons during the incident at

949 E. Brooks Road. (Tr. at 244, 269-70.)

Jones alleges that she was threatened with being taken to jail if she did not consent. (Tr. at 368-69.) She also testified that she had been ordered out of the building at gunpoint and then handcuffed by the officers. (Tr. at 366-67.) However, these statements were inconsistent with her prior statements during a pre-hearing meeting with the government on August 13, 2010, when she advised that she had never been threatened by anyone. (Tr. at 368-69, 404.) Plus, she could not recall if she was handcuffed prior to signing the consent to search.

This court finds that the testimony of the officers is more credible than Jones' testimony on this issue. Multiple officers testified independently to the same sequence of events. Their statements were reliable and consistent. In contrast, Jones' testimony was inconsistent and lacked detail. Her account of the incident changed drastically from her pre-hearing interview statement on August 13, 2010. (Tr. at 368-69, 404.)

Based on the positive testimony of the officers, the totality of the circumstances demonstrates that Jones provided voluntary consent to search the premises at 949 E. Brooks Road. The evidence does not suggest that Jones was subjected to duress or coercion in providing that consent. Her signature and the testimony regarding her cooperative demeanor supports a finding that her consent was voluntarily and freely given on the day in question.

D.  The Scope of the Consent to Search

Finally, Akins asserts that the officers exceeded the scope of the consent to search that was given by Jones.  The standard for determining the scope of a search is objective reasonableness: what a reasonable person would have understood based on the exchange between the officer and the person providing consent.  *United States v. Berry*, 184 Fed. Appx. 470, 474 (6th Cir. 2006)(citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).  Consent does not have to be given in writing; verbal consent is sufficient to stand alone as valid.  *See United States v. Buckingham*, 433 F.3d 508, 513 (6th Cir. 2006).

The testimony of Officer Potts shows that the police first obtained verbal consent from Jones to search the building, and then Jones executed the police department's standard consent form.  (Tr. at 273-74.)  Jones was cooperative and even accompanied the officers throughout the room as they proceeded to search the premises.  Jones never restricted the officers' search of the premises in any way.  The area above the ceiling tiles was not excluded from the leased premises in the lease agreement, it was not secured or locked, and it was therefore within the scope of Jones' consent.

Akins also argues that the written consent to search form signed by Jones authorized only Officer McMoore and Potts to search the premises but that other officers with the Memphis Police Department actually participated in the search, and therefore the

17

search exceeded the scope of the Jones' consent. Akins cites no case authority for the proposition that an officer, once he receives permission to search, cannot enlist other officers to assist him or to search on his behalf. The consent to search actually identifies the Memphis Police Department as the agency authorized to conduct the search. In addition, Jones had already given verbal consent to the officers, without restriction, to search the premises. Accordingly, the court concludes that the officers did not exceed the scope of the consent by allowing other MPD officers to search.

## III. RECOMMENDATION

For the reasons expressed above, this court recommends that Akins' motion to suppress be denied.

Respectfully submitted this 17th day of December, 2010.

                                                s/Diane K. Vescovo
                                                DIANE K. VESCOVO
                                                UNITED STATES MAGISTRATE JUDGE