IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,  )
                           )
        Plaintiff,         )
                           )
vs.                        )   No. 08-20397-JPM-dkv
                           )
MORRIS AKINS,              )
                           )
        Defendant.         )

---

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS THE
SHOW-UP AND IN-COURT IDENTIFICATION OF AKINS

---

The defendant, Morris Akins, has been charged in a four-count indictment with (1) robbery affecting commerce in violation of 18 U.S.C. § 1951; (2) knowingly using and carrying a firearm during robbery affecting commerce in violation of 18 U.S.C. § 924(c); (3) killing Michael Byest with the intent to prevent him from communicating information relating to a robbery affecting commerce to law enforcement officer or judge of the United States; and (4) conspiring to affect interstate commerce by robbery from on or about May 10, 2007 to on or about June 11, 2007.  Before the court is the May 7, 2010 motion of Akins to suppress the show-up identification and the state court identification of Akins by witness Michael Byest.  The government filed a timely response in opposition.  The motion was referred to the United States Magistrate Judge for report and recommendation.

Pursuant to the reference, an evidentiary hearing was held on

August 16 and 17, 2010.[1] At that hearing, the defense called three witnesses: (1) private investigator Dorv Armour; (2) the defendant, Akins; and (3) expert witness Dr. John Brigham. The defense produced a number of exhibits including the booking photograph of Akins (Ex. 1); photographs relating to the scene of the incident (Ex. 2-16); a CD of the relevant 911 dispatch calls (Ex. 17); a CD of Akins' preliminary hearing in state court (Ex. 18); the curriculum vita of Dr. Brigham (Ex. 19); the affidavit of complaint (Ex. 20); A/T-3 (Ex. 21); A/T-5, Officer Taylor's memo (Ex. 22); A/T-6 (Ex. 23); A/T-7 (Ex. 24); A/T-8, Byest's written statement (Ex. 25); and A/T-20 (Ex. 26). The government called three witnesses: (1) Lt. Jerry Webb; (2) Susan Taylor, with the District Attorney's Office; and (3) Sergeant Joseph Poindexter. The government also produced several exhibits including: the MPD accident report (Ex. 27); the transcript of Akins' preliminary hearing (Ex. 28.); and Susan Taylor's notes (Ex. 29). After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

---

[1] The evidentiary hearing included both the present motion to suppress (D.E. No. 225) and Akins' Motion to Suppress the Search of 949 E. Brooks Road filed May 10, 2010, (D.E. No. 226), for which a separate Report and Recommendation is submitted.

I. PROPOSED FINDINGS OF FACT

On May 10, 2007 at or around 6:00 pm, the Memphis Police Department ("MPD") responded to a robbery dispatch at the Easy Way grocery store ("Easy Way") located at 4599 Elvis Presley Boulevard, Memphis, Tennessee. (Tr. at 120.) The dispatch alerted the MPD that there were two black male suspects and one female suspect who left the scene in a white and tan Chevrolet Tahoe with a license plate number "389-LBC." Lt. Jerry Webb arrived at the scene of the Easy Way and spoke with a witness, Michael Byest. (Tr. at 122.)

According to Lt. Webb's testimony, Byest was an employee at the Advance Auto Parts store directly adjacent to the Easy Way grocery.[2] (Tr. at 122; Ex. 25.) Byest reported to the officers that he witnessed a man pacing in the Advance Auto Parts parking lot. (Tr. at 144.) A few minutes later, Byest said he saw a black male with a blue shirt come out of the Easy Way and walk around the back of the store. (Tr. at 103.) Byest observed the man jump into the back of the white and tan Chevrolet Tahoe driven by the black male who had been pacing in the parking lot and accompanied by a black female passenger. (Tr. at 122.) According to Lt. Webb, Byest provided the officers with a tag number "389-LBC", which was only one character off from the actual tag number "389-LQC". (Tr. at 123, 138-39.) Byest informed the officers that he had seen all

---

[2] Byest was not available to testify at the evidentiary hearing because on February 17, 2008 police discovered that he had been murdered in his home.

3

the individuals and was prepared to make an identification if necessary. (Tr. at 125.)

Shortly after the robbery occurred, officers located and detained three suspects: Akins, Willie Mae Stokes, and Michael Hill. (Tr. at 124-25, 140, 143.) The officers brought all three suspects to the scene of the robbery, handcuffed and in separate patrol cars, so that Byest could identify each one individually. (Tr. at 124-25, 140.) Within 30 to 35 minutes of the robbery, Byest identified Akins and Willie Mae Stokes as individuals who fled the scene in the Tahoe. (Tr. at 125-26, 143.) He also eliminated Michael Hill as a suspect. (Tr. at 126.) Lt. Webb testified that Byest was told that he did not have to make a positive identification. (Tr. at 126.)

Akins admits that he was at Advanced Auto Parts on May 10, 2007. (Tr. at 33.) He testified, however, that he went to Advanced Auto Parts to get a part, but that after he got out of his truck, he changed his mind about going into the store and got back into his truck and left to go back to his place of business at 949 East Brooks Road. (Tr. at 33-34.) Akins further testified that the police arrived at 949 East Brooks Road, told him of a robbery that had taken place at the Easy Way, handcuffed him, and took him back to the Easy Way for identification. (Tr. 34-36.) At the Easy Way, Akins stated that the police brought out four people, one at a time, to the police car, where he was handcuffed and sitting in the back of the car, to possibly identify him. (Tr. at 37-40.)

4

According to Akins, each individual looked at him through the window of the squad car, the first three individuals seemed to shake their heads indicating "no," (Tr. at 37-39), but the last man was brought within 20 feet of the car he shook his head to indicate "yes." (Tr. at 40.)

There is a discrepancy in the testimony of Lt. Webb and Akins as to whether Akins was taken out of the patrol car during the show-up identification. (TR at 40, 142.) Lt. Webb testified that Akins, "as best as [he] could recall," was taken out of the squad car and was standing right next to the car when he was observed by Byest. (Tr. at 141-42.) Akins stated that Byest viewed him 20 feet away, while he was sitting in the back of the squad car. (Tr. at 40.)[3]

In addition to the show-up identification, Byest later made an in-court identification of Akins at the state court preliminary hearing on May 31, 2007. (Tr. at 157.) Susan Taylor, the prosecuting attorney with the District Attorney's Office handling the preliminary hearing in state court, testified that she did not point out Akins to Byest prior to the hearing or show Byest where Akins would be sitting. (Tr. at 158.) The recording of Byest's testimony from the state preliminary hearing was admitted into

---

[3] This court, however, has previously found that Akins is not a credible witness based on his multiple felony convictions, his bias as an interested party in the proceeding, and the lack of evidence corroborating his testimony. Furthermore, Akins appeared nervous when he testified about why he was at the Advanced Auto Parts store earlier that day.

5

evidence, ("Ex. 18"), and the transcript of the hearing was also introduced into evidence, ("Ex. 28"). In the state preliminary hearing, Byest testified that he worked at Advanced Auto Parts next door to the Easy Way grocery. He was in the parking lot at Advanced Auto Parts when he noticed a white SUV parked on the back side of the Advanced Auto Parts' parking lot. Byest saw a man pacing in the parking lot who never went into the store. A few minutes later he noticed a man fleeing from the Easy Way around the back side of the store who then jumped into the Tahoe which fled the scene. Byest identified Akins as the driver of the vehicle.

Dr. Brigham, an emeritus professor of psychlogy at Florida State University, testified as an expert witness on behalf of the defense. (Tr. at 64.) His primary focus of research for thirty years was eyewitness memory. (Tr. at 65.) Dr. Brigham said that he would classify Byest's identification of Akins as "questionable." (Tr. at 82.) He testified that the identification was "suggestive" for the following reasons: it was a show-up identification, Akins was handcuffed, Akins was not removed from a police car, the witness was told that the get-away truck had been located, and a woman accomplice was brought along with Akins. (Tr. at 80-81.) Dr. Brigham testified that research shows that a witness' certainty of an identification is not a reliable indicator of accuracy. (Tr. at 88.) Dr. Brigham also testified that in his expert opinion the subsequent state court hearing was "not very meaningful" because there is no way to know if the witness is

relying on his memory from the show-up identification. (Tr. at 89-91.)

Dr. Brigham provided no written report. (Tr. at 93.) His fee is $300 per hour or $1800 per day. (Tr. at 93.) He usually testifies on behalf of the defense; he has only testified for the prosecution two times out of several hundred. (Tr. at 95.) Dr. Brigham testified that he is excluded from testifying as an expert about fifty percent of the time in court. (Tr. at 96.)

II. PROPOSED CONCLUSIONS OF LAW

In the present motion, Akins argues that both the show-up identification and the in-court identification made by Byest should be suppressed because the identification procedures were so unduly suggestive and unreliable that he was denied due process of law. In response, the government argues that both identification procedures were reliable; therefore, Akins' motion to suppress should be denied.

A.  Show-up Identification of Akins

A show-up is an identification procedure in which suspects are singularly and directly shown to a witness for the purpose of identification. BLACK'S LAW DICTIONARY 656 (3d pocket ed. 2006). A show-up identification should not be admitted into evidence if the confrontation conducted was so unnecessarily suggestive and conducive to irreparable mistaken identification so as to deny a defendant due process of law. *Neil v. Biggers*, 409 U.S. 188, 196 (1972)(citing *Stoval v. Denno*, 388 U.S. 293, 301-02 (1967)). The

defendant has the burden to demonstrate that the identification procedure violates his or her right to due process. "A defendant is denied due process 'only when the identification evidence is so unreliable that its introduction renders a trial unfair.'" *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004)(quoting *Smith v. Perini*, 723 F.2d 478, 482 (6th Cir. 1983)). The Sixth Circuit applies a two-step analysis when determining whether an identification procedure should be suppressed. *Meyer*, 359 U.S. at 824. First, the defendant has the burden of proving that the identification procedure was unnecessarily suggestive. *Id.* Second, if the defendant demonstrates that the procedure was suggestive, the court will then determine whether the procedure was nonetheless reliable. *Id.*

1. *Whether the Show-up Identification was Unduly Suggestive*

In the present case, Akins argues that he has met his burden to establish that the show-up identification was unduly suggestive because (1) the Supreme Court has recognized that a show-up is disfavored because it is suggestive, (2) Dr. Brigham has demonstrated that show-ups are inherently suggestive, and (3) Dr. Brigham has shown that Akins' show-up was even more biased than a standard show-up. Specifically, Dr. Brigham called Akins' show-up "questionable" because at the time of the show-up Akins was viewed by four witnesses while seated in the back of a police car in handcuffs, Willie Mae Stokes and Michael Hill were both handcuffed and transported to the scene of the crime in patrol cars, Byest was

told that the getaway car had been found, and Byest's testimony on where he viewed Akins pacing is inconsistent. In response, the government argues that the show-up was not unduly suggestive because Byest made the identification shortly after the initial robbery call, he viewed each suspect separately, and Byest identified Akins and Stokes, but eliminated Hill as a suspect.

Although the Supreme Court recognized in *Stovall v. Denno*, 388 U.S. 293, 302 (1967), that show-ups have been condemned, the Court also recognized that whether a show-up violated due process depends on the totality of the circumstances. (*Id.*) In fact, the Sixth Circuit has repeatedly held that prompt, certain, on-the-scene show-ups are not unnecessarily suggestive. *See United States v. Craig*, 198 Fed. Appx. 459, 467 (6th Cir. 2006)(holding that a bank manager's identification of a robber was not unduly suggestive because the manager viewed the robber's face, gave an accurate description to the police, and did not hesitate when identifying the robber twenty minutes after the robber's arrest); *Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir. 1989)(holding that a show-up did not violate due process because the bakery employee (who was the victim) had direct contact with a robber, her attention was focused, and she identified the suspect as the robber thirty minutes after the robbery without any uncertainty); *Stidham v. Wingo*, 482 F.2d 817, 818-19 (6th Cir. 1973)(finding a show-up permissible when the victim of a robbery was brought immediately to the scene of arrest where he identified the defendant as a robber).

Additionally, the Sixth Circuit noted that "handcuffs and police custody are necessary incidents of an on-the-scene identification that do not render the pretrial identification procedure unnecessarily suggestive." *Craig*, 198 Fed. Appx. at 466 n. 1.

Byest was selective in his identification. Although three suspects were brought to Byest to be identified, Byest eliminated Michael Hill as a suspect. Dr. Brigham stated that the fact that Byest was selective is a positive factor and indicates that "Mr. Byest wasn't simply going to pick out anybody he saw." Byest also gave a detailed description of Akins and the car that he was driving. It is important to note that Dr. Brigham never said the show-up was *unduly* suggestive. He only stated that it was "questionable," that the show-up was "not necessarily wrong, but that it's suggestive enough that it should not be given a lot of strength in terms of its probative value," and that "the Morris Akins show-up was more suggestive than the average show-up." (Tr. at 82, 89.) Dr. Brigham did state that he did not like show-ups in general. (Tr. at 106.) There is no evidence to show that the officers pressured Byest in any way to make a positive identification. Byest identified Akins as the getaway driver within thirty to thirty-five minutes after he gave a detailed description of Akins to the police. In light of these factors, the

court finds that Akins has not proven the show-up identification was unduly suggestive.[4]

2. *Whether the Show-up Identification was Reliable*

Even though the court has found that Akins did not prove that the show-up was unduly suggestive, the court will analyze whether the show-up was none-the-less reliable. Akins argues that there are several indications which demonstrate that the show-up was unreliable: Byest's level of certainty should be questioned because he only gave his level of confidence three weeks after the show-up; Byest did not show up at felony response; the lack of documentation regarding exactly what occurred; Byest was the only witness that identified Akins; the officers did not ask Byest to identify Akins' clothing; the random nature of three individuals taken to the show-up; the lack of proof that the bullet recovered from Easy Way matches the firearm recovered at 949 E. Brooks Road; and Byest is now deceased and cannot be cross-examined.

In response, the government submits that these arguments are unsupported and that, using the five factors listed in *Neil v. Biggers*, the totality of the circumstances demonstrate that the show-up identification was reliable. Additionally, the government submits that Byest's identification is also supported by the following independent evidence against Akins: within minutes of the

---

[4] There is a discrepancy in the testimony of Lt. Webb and Akins as to whether Akins was taken out of the patrol car during the show-up identification. The court finds this discrepancy to be immaterial.

robbery, Akins was located several miles from the Easy Way and in possession of a vehicle matching the description given by Byest; the search of E. Brooks Road, Suite 2, where Akins was located and detained, resulted in the recovery of a silver firearm and a patterned blue shirt - both matching Byest's description given to the police; the ballistics report confirmed that the firearm recovered had similar characteristics to a bullet found at the Easy Way; and Akins himself admitted to being at the Advanced Auto Parts Store, driving his Tahoe, just minutes before the robbery occurred.

The Supreme Court looks at the totality of the circumstances to determine whether an identification procedure was reliable and lists the following factors to consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' description of the criminal; (4) the level of certainty of the witness at the confrontation; (5) and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). In addition to the factors listed in *Biggers*, courts may also consider any independent evidence against the defendant as long as it is reliable. *Keene v. Mitchell*, 525 F.3d 461, 466 (6th Cir. 2008).

The first factor, the opportunity of the witness to view the criminal at the time of the crime, weighs in favor of the reliability of the show-up identification. In his written statement, (Ex. 25), Byest said that he first noticed Akins because

Akins looked suspicious while pacing in the Advanced Auto Zone parking lot. Byest viewed Akins for several *minutes* before Akins left the scene. The second and third factors also indicate that the show-up was reliable. Byest seemed to pay a great degree of attention to Akins. He was able to describe Akins' actions in detail and was not involved in the crime taking place or under any sort of pressure while observing Akins. Byest was able to give the MPD an accurate description of the Tahoe Akins was driving and descriptions of the three individuals inside the Tahoe. Byest also gave the officers the car's license plate number, mistaking only one letter. The fourth factor, the witness' level of certainty, is also positive. Although Byest did not state his certainty until three weeks after the robbery, he did answer affirmatively when asked whether he was "positive the guy the Police brought back to the Easy Way was the guy [he] saw driving the Chevy Tahoe." (Ex. 25.) There are also no indications that Byest was uncertain of his identification. Finally, the fifth factor weighs in favor of the reliability of the show-up. The show-up took place only 30 to 35 minutes after the robbery. In addition to these five factors, Dr. Brigham agreed that the following factors also weigh in favor of the show-up being reliable: Byest was an adult (age 32); Byest and the defendant were of the same race; during Byest's observation of Akins, Byest was just a witness and never had a gun pointed at him; the distance was not very great between where Akins stood and where

13

Byest witnessed Akins; and Byest was selective in his identification. (Tr. at 98-106, 109.)

Although the defense goes to great lengths to try to impeach Byest's testimony through pointing out inconsistencies concerning where Byest said he was standing when he witnessed Akins, the court does not find this convincing. Byest's testimony in the preliminary hearing and his statement taken by police on May 30, 2007 consistently describe what he witnessed on May 10, 2007, in all material respects.

In addition, the fact that Byest is now deceased and cannot be cross-examined does not persuade the court to suppress the show-up. Akins had the opportunity to cross-examine Byest through his attorney when Byest testified under oath at the state court preliminary hearing. Furthermore, the fact that Byest was not asked about Akins' clothing or that the ballistics report does not definitively state that the bullet found at the Easy Way came from the gun retrieved at 949 E. Brooks Road, but only states that the firearm had similar characteristics to the bullet, does not make Byest's identification of Akins any less reliable.

Based on Byest's opportunity to view Akins, his attention to the situation at hand, his detailed description of the suspects, Akins' Tahoe, and its license plate number, and the short amount of time that elapsed between Byest's report to the police and his identification of Akins, the totality of the circumstances demonstrates that the show-up identification was reliable. The

evidence does not suggest that Byest was under any pressure by the police to make a positive identification or that he was ever uncertain about the identification that he made. Furthermore, the fact that Byest was a black, adult male, selective in his identification of suspects, and gave detailed descriptions of Akins' Tahoe and the t-shirt that were both found at 949 E. Brooks Road, also adds to the reliability of the show-up.

The show-up identification has not been proven to be unduly suggestive and, based on the totality of the circumstances, the show-up identification was reliable. Thus, the court recommends that Akins' motion to suppress the show-up identification be denied.

B.  In-Court Identification of Akins

Akins argues that the in-court identification of Akins made by Byest at the state preliminary hearing on May 31, 2007 should be suppressed because "it is the product of a flawed process and unreliable." (D.E. No. 271 at 12.) If an in-court identification is based on a previous improper pretrial identification, the in-court identification must be suppressed as violating due process. *See Simmons v. United States*, 390 U.S. 377, 384 (1968). Akins has presented no evidence that indicates the in-court identification was unreliable besides stating that it was the product of an unduly suggestive show-up. There is nothing in the state's preliminary hearing transcript that demonstrates Byest's identification was unreliable. In addition, Susan Taylor, the prosecuting attorney

handling the preliminary hearing, testified that she did not point out Akins to Byest and did not pressure Byest into giving a positive identification. Because the show-up identification was found to be reliable and there is no evidence that the in-court identification was unreliable, this court recommends that Akins' motion to suppress the in-court identification be denied.

III. RECOMMENDATION

For the reasons expressed above, it is recommended that Akins' motion to suppress be denied.

Respectfully submitted this 17th day of December, 2010.

s/Diane K. Vescovo  
DIANE K. VESCOVO  
UNITED STATES MAGISTRATE JUDGE